# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | Civil Action No: 6:15-cv-948 |
| | § | |
| v. | § | |
| | § | |
| TARIQ MAHMOOD, | § | |
| | § | |
| Defendant. | § | |

## THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

Comes now the United States of America, Plaintiff, and, pursuant to Rule 56 of the Federal Rules of Civil Procedure, moves for final summary judgment on the grounds that there is no triable issue of material fact and the Government is entitled to judgment as a matter of law. In support of said Motion, the United States provides its Memorandum in Support below.

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

This case is a simple, yet profound display of the United States legal system functioning as intended: all three branches of the federal government operating under criminal, civil, and procedural laws to effectively hold accountable those that would commit fraud against the United States. Those laws dictate summary judgment in this case, a result intended by Congress and recognized by federal courts across the country.

Congress passed criminal statutes prohibiting health care fraud against the United States. *See, e.g.,* 18 U.S.C. §§ 1347 and 1349. Defendant Dr. Tariq Mahmood ("Mahmood") chose to commit health care fraud against Medicare and Medicaid, which prompted his prosecution by the

United States Department of Justice, his conviction by a jury of his peers, and his sentencing by this Court.

Congress also enacted the False Claims Act, a civil statute designed to compensate taxpayers for, and protect the United States Treasury against, fraud upon the public fisc. Congress included language in the False Claims Act estopping a person from denying False Claims Act liability if, among other things, that person had previously been convicted of criminal fraud for the same activity. 31 U.S.C. § 3731(e).

Following Mahmood's conviction for health care fraud, the United States filed this action seeking to recover damages against Mahmood. Mahmood answered this action, admitted the United States' material allegations, and acknowledged the application of collateral estoppel in this action. However, Mahmood is appealing his criminal conviction and believes that this action should be stayed pending the outcome of his criminal appeal. The issues before the Court on this Motion are therefore as follows:

(1) Is Defendant Mahmood estopped from denying the United States' False Claims Act allegations against him?

(2) If estoppel applies, is the United States entitled to summary judgment as a matter of law?

(3) If summary judgment is appropriate, what are the damages owed to the United States and how should the Court calculate the applicable civil penalties?

(4) Should this action be stayed pending Mahmood's criminal appeal, preventing the United States from efficiently taking a judgment against him?

As the United States establishes herein, estoppel applies, Mahmood's request for a stay of this civil action is without legal support, and final summary judgment should be granted against Mahmood in the amount of $2,091,480.82.

STATEMENT OF UNDISPUTED MATERIAL FACTS

Mahmood answered the United States' Complaint in this action, admitting to, in addition to other admissions, the following:[1]

(1) Mahmood controlled the operation of several Texas hospitals from at least 2009 to 2011, and Mahmood admits that a jury found him guilty of causing hospital personnel to improperly and fraudulently assign false diagnostic codes to submissions to Medicare and Texas Medicaid for payment. Exs. A and B, ¶¶2-3.

(2) Mahmood admits that, in 2015, a jury found him guilty of one count of conspiracy to commit health care fraud and seven counts of health care fraud. Exs. A and B, ¶¶6-7. The prosecution was in this Court in case *United States v. Mahmood*, No. 6-13-CR-00032. *Id.*

(3) Mahmood admits the jury that found him guilty of health care fraud heard evidence concerning 85 claims, and he admits that Medicare and Texas Medicaid reimbursed hospitals controlled by him in the amount of $578,240.41. Exs. A and B, ¶¶4-5.

(4) Mahmood admits that this Court determined he owed $578,240.41 in restitution to Government payors arising from his criminal conviction for health care fraud. Exs. A and B, ¶¶45-49.

(5) Mahmood admits he was sentenced to 135 months in prison as a result of the jury's verdict and that, prior to filing suit, the United States demanded Mahmood's payment of the amounts claimed herein. Exs. A and B, ¶¶51-53.

(6) Rather than denying the elements listed for each claim brought by the United States, Mahmood admits that he is estopped from denying the essential elements of his "offenses of conviction." Exs. A and B, ¶¶54-69.

(7) Mahmood admits that, if his conviction is not overturned, the United States may be entitled to the damages it seeks in this action. Ex. B, ¶70.

The following material facts are also not in dispute:

(8) Mahmood's criminal conviction included findings of his violation of 18 U.S.C. §§ 1347 and 1349. Judgment in a Criminal Case, Doc. 194 in Criminal Action 6-13-CR-00032 filed April 14, 2015, attached to the United States' Complaint and a certified copy of which is attached hereto as Exhibit C; *see also* Jury Instructions,

---

[1] The United States asks the Court to take judicial notice of the pleadings on file in this action. The United States' Complaint is Document 1 in the Court's Docket. Mahmood's Answer is Document 5 in the Docket. In an abundance of caution for evidentiary purposes, the United States' Complaint is attached hereto as Exhibit A and Mahmood's Answer is attached hereto as Exhibit B.

Doc. 143 in Criminal Action 6-13-CR-00032 filed July 24, 2014, a certified copy of which is attached hereto as <u>Exhibit D</u>.

(9) In Mahmood's criminal proceedings, the Court and the jury considered evidence of 85 false claims submitted to Medicare. *See* Sentencing Hearing Transcript, April 13, 2015, at 5:3-6; 6:9-11; 28:7-9; 48:20-21; 51:19-24, certified excerpts of which are attached hereto as <u>Exhibit E</u>; *see also* Summary Spreadsheet, Government Trial Exhibit 15A, a redacted version of which is attached hereto as <u>Exhibit F</u>.[2]

(10) Mahmood has appealed his criminal conviction to the Fifth Circuit Court of Appeals. That appeal remains pending. *See* Notice of Appeal, Doc. 198 in Criminal Action 6-13-CR-00032 filed April 17, 2015, a certified copy of which is attached hereto as <u>Exhibit G</u>.

(11) In this action, the United States is giving Mahmood credit toward the $578,240.21 restitution amount he was ordered to repay to Government payors in the Judgment in a Criminal Case. Those Government payors are the Centers for Medicare and Medicaid Services (CMS) and the Texas Department of Health and Human Services (TDHHS). Mahmood has paid approximately $400,000.00 of the restitution owed to Government payors. The United States expects to recover the remaining restitution through collection proceedings and is currently working with Mahmood's banks to recover the difference. Accordingly, for purposes of this action, the United States is not seeking a double recovery of the restitution amount owed to CMS and TDHHS.

## SUMMARY JUDGMENT LEGAL STANDARD

"Summary Judgment is an excellent device by which district courts may make expedited dispositions of those cases in which a trial would be fruitless." *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980). Summary judgment is appropriate if the record evidence shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The movant must inform the court of the basis for its motion and demonstrate the absence of a genuine issue of material fact for trial. *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 191 (5th Cir. 1990). If the movant does this, then the non-movant must

---

[2] The unredacted version of Trial Exhibit 15A was sealed as it contained patient information. If necessary, the United States can submit the complete Trial Exhibit 15A *in camera* in connection with the Court's consideration of this Motion. The redacted version attached hereto excludes potentially sensitive information and is presented in a more legible format.

come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)). The non-movant cannot simply rely on conclusory allegations or unsubstantiated assertions but must submit evidence establishing a fact issue. *Howell Hydrocarbons, Inc.*, 897 F.2d at 191. If the non-movant offers only weak evidence on an essential element necessary to support a judgment in its favor, then summary judgment is proper. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075-76 (5th Cir. 1994).

### THE FALSE CLAIMS ACT

The United States' Complaint is founded on the False Claims Act (FCA), as amended, 31 U.S.C. §§ 3729 *et seq.* The FCA intends "to protect the treasury against the hungry and unscrupulous host that encompasses it on every side, and should be construed accordingly." *See United States v. Griswold*, 24 F. 361, 366 (D. Ore. 1885). The elements necessary to state a cause of action under the FCA in most cases are as follows: (1) a false statement or fraudulent course of conduct; (2) that was made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money (*i.e.*, that involved a claim). *United States ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009) (internal quotation marks omitted).

The FCA "*protects* the Treasury from monetary injury. Put plainly, the statute is remedial and exposes even unsuccessful claims to liability. A person that presented fraudulent claims that were never paid remains liable for the [FCA's] civil penalty." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 189 (5th Cir. 2009) (emphasis in original). Most importantly for the present Motion, Congress envisioned summary relief for FCA claims in Section 3731(e), which states:

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of

the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.[3]

Of course, Section 3731(e) is consistent with federal common law estoppel principles, including the preclusive effect a criminal conviction has on future civil proceedings. *See Montana v. United States*, 440 U.S. 147, 153-54 (1979) ("To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."); *United States v. Boutte*, 907 F. Supp. 239, 241 (E.D. Tex. 1995) ("Collateral estoppel is particularly appropriate when the prior proceeding was a criminal action."). Section 3731(e) is further consistent with 18 U.S.C. § 3664(l) pertaining to criminal restitution, which provides that "[a] conviction of a defendant for an offense involving the act giving rise to an order of restitution shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding . . . brought by the victim." 18 U.S.C. § 3664(l).

### ARGUMENTS

**1.  Mahmood is estopped from denying the United States' claims against him.**

The first issue for the Court's consideration is whether Mahmood is estopped from denying the United States' claims against him by virtue of his criminal conviction. There is really no dispute on this issue, as Mahmood apparently admits that estoppel applies. Ex. B, ¶¶54-69. In fact, rather than denying the elements listed in each claim for relief in the United States' Complaint, Mahmood simply notes that he "acknowledges he is estopped from denying the essential elements of his offenses of conviction." *Id.* Mahmood also recognizes that

---
[3] This action is brought under Section 3730(a).

summary judgment is inevitable, citing his intention to seek relief under Federal Rule of Civil Procedure 60(b) if his convictions are reversed. *Id.*; *see* FED. R. CIV. P. 60(b)(5) (providing for relief from a final judgment if "it is based on an earlier judgment that has been reversed or vacated").

Indeed, Mahmood really has no choice but to admit that estoppel applies in the face of decades of case law applying estoppel in FCA cases following a criminal conviction for the same fraud. *See, e.g., United States v. Anghaie*, No. 15-10454, 2015 WL 7720313, *2 (11th Cir. Nov. 30, 2015) ("The [defendants] were also convicted of conspiring to defraud the government. These convictions required proof beyond a reasonable doubt that the [defendants] agreed to accomplish an unlawful plan; that they knew the unlawful purpose of the plan and joined willfully; that they engaged in at least one of the charged overt acts; and that they knowingly committed that act with the purpose of accomplishing some object of the conspiracy. Based on their convictions, the [defendants] are estopped from denying either that they conspired to defraud the government or that they knowingly made false claims."); *United States v. Boutte*, 108 F.3d 332, No. 96-40068, 1997 WL 73792, *1 (5th Cir. Feb. 10, 1997) (unpublished opinion) ("The Government correctly asserts, and the court below agreed, that [the defendant] is collaterally estopped from challenging the facts underlying the 23 counts for which he has already been convicted. The Government is not required to reprove the same facts especially when, as here, a lower standard of proof applies to the civil violations under the False Claims Act."); *United States ex rel. Regnerus v. Ford*, 19 F.3d 20, No. 93-1933, 1994 WL 70853, *1 (6th Cir. Mar. 2, 1994) (unpublished opinion) ("[Defendant] is estopped from denying the essential elements of his False Claims Act violation due to his earlier criminal conviction for the same transaction."); *United States v. Thomas*, 709 F.2d 968 (5th Cir. 1983) (applying collateral

7

estoppel and affirming summary judgment in favor of the United States in False Claims Act suit where defendant had previously been convicted of fraud scheme); *Sell v. United States*, 336 F.2d 467 (10th Cir. 1964) (criminal conviction worked an estoppel as such findings determined issues identical to both cases); *United States v. Boutte*, 907 F. Supp. at 242 ("The present action is precisely the type of companion civil proceeding [Section 3731(e)] addresses.").

As established below, the elements of the crimes for which Mahmood was convicted are the same elements necessary to establish FCA liability in this action. In *United States v. Boutte*, this Court held that a defendant "cannot challenge issues material and necessary to his criminal conviction in an attempt to defeat liability under the False Claims Act." 907 F. Supp. at 241. The issues material and necessary to Mahmood's criminal conviction also establish his liability under the FCA; accordingly, Mahmood is estopped from denying the United States' claims against him in this action.

**2.    Because Mahmood is estopped from denying the United States' claims in this action, the United States is entitled to final summary judgment.**

Mahmood was adjudicated guilty of one count of conspiracy to commit health care fraud and seven counts of health care fraud. Ex. C at p.1. In connection with Mahmood's criminal conviction, the United States proved beyond a reasonable doubt the following:

Count 1:  Conspiracy to Commit Health Care Fraud (18 U.S.C. § 1349)

- Mahmood, along with at least one other person, directly or indirectly, reached an agreement to commit the crime of health care fraud;

- Mahmood knew of the unlawful purpose of the agreement; and

- Mahmood joined the agreement willfully, that is, with the intent to further its unlawful purpose.

Counts 2 through 8:  Health Care Fraud (18 U.S.C. § 1347)

- Mahmood knowingly and willfully executed or attempted to execute a scheme or artifice:

    (a)  to defraud Medicare or Medicaid, that is, to engage in a plan, pattern, or course of action intended to deprive Medicare or Medicaid of money or property with the intent to deceive or cheat Medicare or Medicaid; or

    (b)  to obtain money or property owned by, or under the custody or control of Medicare or Medicaid by means of material false or fraudulent pretenses, representations, or promises with the intent to deceive or cheat someone or some entity.

- The scheme or plan was executed in connection with the delivery of or payment for health care benefits, items, or services; and

- Medicare or Medicaid is a public or private plan or contract, affecting commerce.

*See* Ex. D at pp. 9-14.  The United States' present action alleges three claims for relief:

First Claim for Relief:  Violation of 31 U.S.C. § 3729(a)(1)(A)

- Mahmood knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval;[4] and

- The false or fraudulent claim was material and caused the Government to pay out money.

Second Claim for Relief:  Violation of 31 U.S.C. § 3729(a)(1)(B)

- Mahmood knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim;[5] and

---

[4] The FCA was amended on May 20, 2009 by the Fraud Enforcement and Recovery Act of 2009 (FERA).  It is possible claims submitted prior to that date are governed by the prior version of the statute.  If the pre-FERA version of the statute, § 3729(a)(1), applies to those claims, the Government shows that Mahmood knowingly presented, or caused to be presented**, to an officer or employee of the United States Government or a member of the Armed Forces of the United States** a false or fraudulent claim for payment or approval.  (emphasis showing language in pre-FERA version of FCA).  This, of course, has been established in the criminal prosecution.

[5] If the pre-FERA version of the statute, § 3729(a)(2), applies to claims before May 20, 2009, the Government shows that Mahmood knowingly made, used, or caused to be made or used, a false record or statement to **get** a false or fraudulent claim **paid or approved by the Government**.  (emphasis showing language in pre-FERA version of FCA).  This too has been established in the criminal prosecution.

9

- The false record or statement was material and caused the Government to pay out money.

Third Claim for Relief: Violation of 31 U.S.C. § 3729(a)(1)(C)

- Mahmood conspired to commit a violation of §§ 3729(a)(1)(A) and (B).[6]

*See* Ex. A, ¶¶54-69; *see also United States ex rel. Longhi v. United States*, 575 F.3d at 467 (discussing FCA elements). The United States' successful prosecution of Mahmood for health care fraud and conspiracy to commit health care fraud necessary establishes the elements required for FCA liability in this action as well as the amount of damages and the number of false claims submitted. *See United States v. Szilvagyi*, 398 F. Supp. 2d 842 (E.D. Mich. 2005) (addressing the same three claims for relief under the FCA at issue here following guilty plea for conspiracy to commit health care fraud and assessing FCA damages at the loss amount determined in the criminal proceedings). Accordingly, estoppel applies, there is no material issue of fact for trial, and summary judgment should be granted against Mahmood.

**3. The United States is entitled to summary judgment in the amount of $2,091,480.82.**

As established in Mahmood's criminal prosecution, Mahmood's fraud caused Medicare to pay out at least $574,247.67 and Medicaid to pay out at least $3,992.74. Ex. C at p.6. As detailed in this Court's Judgment in a Criminal Case, the Court determined these amounts to be the losses incurred by Medicare and Medicaid and ordered Mahmood to repay these amounts to the Centers for Medicare and Medicaid Services (CMS) and the Texas Department of Health & Human Services (TDHHS) as restitution. *Id.* at p.6; Ex. E at 58:8-11. For purposes of this civil action and to avoid any potential double recovery of the restitution amounts owed to Government payors, the United States is treating Mahmood's restitution as paid or soon-to-be paid.

---

[6] If the pre-FERA version of the statute, § 3729(a)(3), applies to a conspiracy before May 20, 2009, the Government shows that Mahmood conspired to **defraud the Government by getting a false or fraudulent claim allowed or paid**. (emphasis showing language in pre-FERA version of FCA). Mahmood was found guilty of criminal conspiracy to commit health care fraud, so either version of the FCA is subject to collateral estoppel principles.

### (a) Calculation of Damages

The single damages owed to the United States in this case are *at least* the loss and restitution amounts determined by the Court in the criminal proceedings. The Court ordered Mahmood to pay restitution to Government payors in the amount of $578,240.41, which was the amount Medicare and Medicaid paid on 85 false claims. Ex. B, ¶¶45-49; Ex. C at p. 6; Ex. E at 5:8-11; 58:8-11. In other words, the amount of the claims paid by government payors as a result of Mahmood's fraud is the amount of single damages under the FCA in this action as well as the measure used by the Court to determine loss and restitution. In *United States v. Boutte*, this Court used the loss amount as "the base number" for determining treble damages for FCA purposes. 907 F. Supp. at 241. The same approach is appropriate here. *See also Szilvagyi*, 398 F. Supp. 2d at 849-50 ("18 U.S.C. § 3664 requires the court to determine the total amount of the victim's loss when ordering restitution. The court found the total loss suffered by Medicare to be $836,324. Thus, in the current case Plaintiff is entitled to treble damages of $2,508,972.").

A defendant's violation of the FCA entitles the United States to three times the amount of damages sustained because of the defendant's acts. 31 U.S.C. § 3729(a)(1). This Court has recognized that the FCA "requires the court to award plaintiffs three times the amount of damages actually sustained by the United States due to such frauds." *United States v. Boutte*, 907 F. Supp. at 242. Applying the loss figures in the Judgment in a Criminal Case, treble damages are determined as follows:

| | |
|---|---|
| Treble Damages to Medicare ($574,247.67 x 3) | $1,722,743.01 |
| Treble Damages to Texas Medicaid ($3,992.74 x 3) | $11,978.22 |
| Total Treble Damages | $1,734,721.23 |

However, because the United States is treating Mahmood's $578,240.41 in restitution owed to CMS and TDHHS (*i.e.,* single damages for purposes of this action) as paid or soon-to-be paid,

and pursuant to 18 U.S.C. § 3664(j)(2), Mahmood is entitled to a credit against his treble damages, as follows:

| | |
|---|---:|
| Total Treble Damages | $1,734,721.23 |
| Minus Restitution Ordered | - $578,240.41 |
| **Summary Judgment Damages** | **$1,156,480.82** |

The United States is entitled to final summary judgment awarding compensatory damages of $1,156,480.82.

### (b) Calculation of Civil Penalties

In addition to treble damages, a defendant found liable for violations of the FCA is liable to the United States for a civil penalty for each false claim of not less than $5,500.00 and not more than $11,000.00.[7]  31 U.S.C. § 3729; 28 C.F.R. § 85.3(a)(9). The court, not the jury, sets the appropriate penalty. *Cook County, Illinois v. United States ex rel. Chandler*, 538 U.S. 119, 132 (2003).

#### (i) Number of Claims

There is no dispute that, in Mahmood's criminal case, the jury and this Court heard evidence concerning at least 85 claims that were wrongfully submitted to Medicare and Medicaid. *See* Ex. E at 5:3-6; 6:9-11; 28:7-9; 48:20-21; 51:19-24; Ex. F. In fact, Mahmood states that, "[o]f the total 85 claims [Mahmood] admits that the government reimbursed hospitals controlled by him in the amount of $578,240.41." Ex. B, Doc. 5; ¶¶4-5. Mahmood further admits that the single damage figure of $578,240.41 is "derived from the total amount the government paid on the 85 claims it has identified as fraudulent." Ex. B, Doc. 5; ¶¶54-69.

Mahmood's Answer appears to raise two arguments as to the number of claims: (1) that Mahmood was only found guilty of submitting 7 claims and (2) that some of the claims reduced

---

[7] The text of the FCA provides for penalties of $5,000.00 to $10,000.00, but these amounts have since been adjusted for inflation. *See United States v. Anghaie*, No. 15-10454, 2015 WL 7720313, *2 n.2.

the Government's reimbursement amount and are therefore not fraudulent. Neither of these positions is supportable.

First, Mahmood apparently believes he was only adjudicated guilty of submitting seven fraudulent claims because he was found guilty of seven counts of health care fraud. This position ignores the events surrounding Mahmood's sentencing as well as the plain language of the FCA and the applicable case law. At Mahmood's sentencing hearing, Mahmood's counsel admitted that evidence was submitted at trial pertaining to 85 claims. Ex. E at 6:9-11.

Moreover, the Fifth Circuit, in upholding this Court in *United States v. Boutte*, held that a defendant "is collaterally estopped from challenging *the facts underlying* the 23 counts for which he has already been convicted." 108 F.3d 332, No. 96-40068, 1997 WL 73792, *1 (emphasis added). The United States alleged in Mahmood's criminal prosecution that he had submitted 85 fraudulent claims to government payors. *See* Ex. E at 5:3-6; 6:9-11; 28:7-9; 48:20-21; 51:19-24; Ex. F. Mahmood was convicted of seven counts of health care fraud and one count of conspiracy to commit health care fraud relating to those 85 fraudulent claims. Ex. C. This Court then set the loss amount and awarded restitution based on at least 85 fraudulent claims—not seven. *Id.*; Ex. E at 58:8-1. Under 18 U.S.C. § 3664(l), "a conviction of a defendant for any offense involving the act giving rise to an order of restitution shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding . . . brought by the victim." 18 U.S.C. § 3664(l). Given this Court's prior judgment against Mahmood, he cannot now argue in good faith that he is only on the hook for seven of those claims for purposes of calculating civil penalties under the FCA.

Second, Mahmood apparently believes that some of his fraudulent claims resulted in no damages to the United States and are therefore not eligible to be counted for purposes of setting

the appropriate civil penalty. This Court considered and rejected that argument at Mahmood's sentencing hearing. *See* Ex. E 6:9-11; 20:9-15. The Fifth Circuit also disagrees, holding:

> [The FCA] *protects* the Treasury from monetary injury. Put plainly, the statute is remedial and exposes even unsuccessful claims to liability. A person that presented fraudulent claims that were never paid remains liable for the [FCA's] civil penalty.

*Kanneganti*, 565 F.3d at 189 (emphasis in original). Accordingly, Mahmood is liable for 85 false claims in this action, and he is estopped from claiming otherwise.

### (ii) Penalty Amount

The next question for the Court, then, is the appropriate penalty to assess for each of the 85 false claims. The Court's determination of appropriate civil penalties under the FCA is reviewed for abuse of discretion. *See United States v. Anghaie*, No. 15-10454, 2015 WL 7720313 at *4. The district court in *Anghaie* articulated some of the factors considered by courts in exercising this discretion, including whether the government has been made whole by an award of treble damages, whether the defendant cooperated in the Government's investigation, and whether the Government has shown that a penalty higher than the statutory minimum is appropriate. No. 1:12-cv-102-RS-GRJ, 2015 WL 163046, *9 (N.D. Fla. Jan. 13, 2015) (order) (vacated in part due to time-barred counts). There, the district court specifically pointed out that the defendants' fraud was pervasive and the government had to expend extensive resources to investigate and prosecute the fraud. *Id.* The court therefore imposed the maximum civil penalties. *Id.* The same analysis should be adopted in this action.

The evidence attached hereto amply establishes that Mahmood's false claims were criminal in nature—a fact already adjudicated. As a matter of policy, the United States submits that, in cases such as this one where criminal liability has already been established, the maximum penalty per false claim is appropriate (here, $11,000.00 per claim). Indeed, it is difficult to

fathom when the maximum penalty would ever be appropriate if not when a defendant is found guilty of multiple felonies arising from the false claims. At the very least, each civil penalty should be set above $8,250.00—the penalty this Court recently assessed in *United States ex rel. Harman v. Trinity Industries, Inc.*, which lacked an attendant criminal adjudication. *See United States ex rel. Harman v. Trinity Industries, Inc.*, No. 2:12-cv-89 (E.D. Tex. June 9, 2015) (Final Judgment).[8]

Moreover, Mahmood did not cooperate with the Government, forcing the United States to investigate his fraud at multiple hospitals across Texas. This Court explained the expansiveness at Mahmood's sentencing:

> What's telling about this offense is the length and breadth of the scheme. It went on for many years. The testimony at trial was that at some of these facilities it started as early as 2005 and at other facilities it continued on until April, 2013. This was a protracted scheme, a scheme that went on for many years that involved repeated fraudulent acts. It spanned the State of Texas. It covered three judicial districts . . . and it involved conduct at at least four of the Defendant's hospitals.

Ex. E at 27:8-18; *see also U.S. ex rel. Longhi v. Lithium Power Technologies, Inc.*, 530 F. Supp. 2d 888, 899-901 (S.D. Tex. 2008) (highest penalty figure should be imposed because the defendants' fraud was systematic and knowing.) The time and resources spent pursuing Mahmood and prosecuting his fraud have been enormous, and the United States is entitled to fully replenish the outlays from the United States Treasury that his lack of cooperation and systematic fraud have caused.

Finally, the Fourth Circuit's recent decision in *United States ex rel. Drakeford v. Tuomey* is instructive. 792 F.3d 364 (4th Cir. 2015). The following portions of the Fourth Circuit's opinion are particularly pertinent here:

---

[8] This Court awarded penalties at the statutory minimum in *United States v. Boutte*, noting a lack of evidence as to why the fine should be higher and because the Court was uncertain how developed the record should be in awarding penalties. 907 F. Supp. at 242. Here, ample evidence of criminal behavior is provided for the Court's consideration.

> Clearly, Tuomey's conduct 'involved repeated actions,' . . . as it submitted 21,730 false claims. Thus, while the penalty is certainly severe, it is meant to reflect the sheer breadth of the fraud Tuomey perpetrated upon the federal government. . . . As we have said, '[w]hen an enormous public undertaking spawns a fraud of comparable breadth [high penalties] help[ ] to ensure what we reiterate is the primary purpose of the FCA: making the government completely whole.' . . . Substantial penalties also serve as a powerful mechanism to dissuade such a massive course of fraudulent conduct. . . . And the government has 'a strong interest in preventing fraud' because '[f]raudulent claims make the administration of Medicare more difficult, and widespread fraud would undermine public confidence in the system.'
>
> Nor were Tuomey's actions in this case the result of a 'mere accident.' . . . Rather, the jury determined that Tuomey submitted false claims for Medicare reimbursement 'knowingly,' that is, with actual knowledge, in deliberate ignorance, or with reckless disregard that the claims violated the Stark Law. Under the circumstances, we agree with the government that 'strong medicine is required to cure the defendant's disrespect for the law.'

*Tuomey*, 792 F.3d at 389 (citations omitted). There, the Fourth Circuit upheld civil penalties totaling $119,515,000.00 where single damages totaled $39,313,065.00; in other words, the penalty was approximately three times the single damages. *Id.* at 389. Here, the United States seeks civil penalties against Mahmood for 85 false claims at $11,000 per claim, which totals $935,000.00. That penalty amount is less than twice the single damages of $578,240.41. In fact, even if the Court treated all the compensatory damages of $1,156,480.82 as punitive (which they are not) and combined them with a civil penalty of $935,000.00 for a total of $2,091,480.82, the ratio of punitive damages to single damages is 3.62-to-1. This ratio is almost exactly what the Fourth Circuit upheld in *Tuomey*. 792 F.3d at 389-90 ("Here, the ratio of punitive damages to compensatory damages is approximately 3.6-to-1, which falls just under the ratio the Court deems constitutionally suspect. We therefore conclude that the damages award is constitutional under the Fifth and Eighth Amendments."). The United States asks the Court to prescribe the same strong medicine here that the Fourth Circuit administered in *Tuomey*—a case that lacked a predicate criminal conviction.

**4.      This action should not be stayed, and summary judgment should be entered.**

As mentioned above, Mahmood states in his Answer that he will seek a stay of this action until the resolution of his criminal appeal. Ex. B, Doc. 5; ¶¶54-69. Under this Court's precedent, a request for a stay of this action should be summarily denied. *See DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 70 F. Supp. 3d 808, 814 (E.D. Tex. 2014) (denying request for stay in face of pending appeal in another case); *VirnetX Inc. v. Apple, Inc.*, No. 6:12-cv-855, 2013 WL 7760959, *3 (E.D. Tex. July 22, 2013) (order) (denying motion to stay pending appellate proceedings in a separate case, noting that "it would be imprudent to delay this case based upon speculation about what might happen [in the appeal]"); *Scanner Tech. Corp. v. Nvidia Corp.*, No. 9:06cv205, 2007 WL 2177449, *5 (E.D. Tex. July 26, 2007) (order) (noting that "the pendency of an appeal has no effect on the finality or binding effect of a trial court's holding, and that a final judgment retains all of its *res judicata* consequences pending decision of the appeal") (citing *Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.*, 170 F.3d 1373 (Fed. Cir. 1999)); *Schimek v. United Healthcare Group*, No. 4:06cv77, 2007 WL 1466642, *2 (E.D. Tex. May 16, 2007) (mem. adopting report and recommendation) ("Even if the plaintiff appeals the prior judgment, its preclusive effect is not affected while the case is on appeal."); *Timmons v. Special Ins. Servs.*, 984 F. Supp. 997, 1008 (E.D. Tex. 1997) ("A judgment is valid, even if pending on appeal. . . . Thus, the pendency of an appeal does not affect the finality of a judgment for purposes of res judicata or collateral estoppel.").

A similar request for a stay pending the appeal of the prior case was made and rejected in the FCA context in *United States v. Szilvagyi*. 398 F. Supp. 2d 842. There, the defendants pled guilty to conspiracy to commit health care fraud and mail fraud. *Id.* at 844. The defendants later attempted to withdraw their guilty pleas, the district court did not allow it, and the defendants

appealed their convictions. *Id.* The United States subsequently filed an FCA action and moved for summary judgment. *Id.* The defendants sought a stay of the FCA action pending their criminal appeals, which the court properly denied. *Id.* at 847. The court held:

> However, in the interim Plaintiff is entitled to the collateral estoppel effects of the judgment. The Supreme Court has noted that the trial court should be the 'main event' instead of a 'tryout on the road.' *Anderson v. Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (quoting *Wainwright v. Sykes,* 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). The winner at the trial court level should not have to wait in limbo while the case makes its way through the appellate process. This is especially true in this case, where the amounts in question are substantial.

*Id.* The district court in *Szilvagyi* also rejected the defendants' argument that granting summary judgment in the FCA case would result in an unjust result if their convictions were later overturned. *Id.* The district court noted that the Federal Rules of Civil Procedure "specifically provide for relief from a judgment when 'a prior judgment upon which it is based has been reversed or otherwise vacated.'" *Id.* (citing FED. R. CIV. P. 60(b)(5)).

The reasoning in *Szilvagyi* applies here. And that reasoning is not only legally well-founded, but also is correct on policy grounds. Where fraud has been perpetrated on the United States, a person adjudicated guilty of that fraud should not be empowered to stay a civil case and certain summary judgment while he rolls the dice on appeal. If allowed, the convicted defendant would be unjustifiably given the benefit of the doubt while the taxpayers wait empty-handed, hoping assets do not otherwise vanish. Such a result also encourages multiple appeals and discourages the efficient resolution of the underlying conviction. On the other hand, if stays are disallowed and summary judgment is granted in these situations, the United States benefits from its criminal prosecution of the defendant, can undertake collection efforts immediately, and is entrusted to repay the defendant if his conviction is actually overturned. The outcome here is clear, and the United States asks the Court to enter final summary judgment against Mahmood.

**CONCLUSION**

WHEREFORE, based on the forgoing, the United States of America prays that this Court enter final judgment in its favor and against Defendant Tariq Mahmood awarding the United States $1,156,480.82 in damages, $935,000.00 in civil penalties, for a total of **$2,091,480.82**, plus the costs of this action pursuant to 31 U.S.C. § 3729(a)(3) and applicable judgment interest.

Respectfully submitted,

JOHN M. BALES
United States Attorney

   */s/ Joshua M. Russ*
JOSHUA M. RUSS
Assistant U.S. Attorney
Eastern District of Texas
101 East Park Blvd., Suite 500
Plano, Texas 75074
E-mail: josh.m.russ@usdoj.gov
(972) 509-1201
(972) 509-1209 (fax)
Texas State Bar # 24074990

JAMES GILLINGHAM
Assistant U.S. Attorney
Eastern District of Texas
110 N. College Street; Suite 700
Tyler, Texas 75702
E-mail: James.Gillingham@usdoj.gov
(903) 590-1400
(903) 590-1436 (fax)
Texas State Bar # 24065295

**ATTORNEYS FOR THE
UNITED STATES OF AMERICA**

## CERTIFICATE OF SERVICE

      I hereby certify on this 17th day of December 2015, I caused copies of the United States' Motion for Summary Judgment to be served by electronic mail on:

Franklyn Mickelsen
Broden & Mickelsen
2600 State Street
Dallas, TX 75204
(214) 720-9552
mick@texascrimlaw.com

                                      /s/ Joshua M. Russ
                                      JOSHUA M. RUSS