IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| UNITED STATES OF AMERICA, | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | Civil Action No: 6:15-cv-948-MHS |
| | § | |
| v. | § | |
| | § | |
| TARIQ MAHMOOD, | § | |
| | § | |
| Defendant. | § | |

## THE UNITED STATES' CONSOLIDATED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, RESPONSE TO MOTION FOR CONTINUANCE, AND RESPONSE TO MOTION TO STAY PROCEEDINGS

Comes now the United States of America, Plaintiff, and submits this consolidated filing containing its (1) Reply in Support of the United States' Motion for Summary Judgment, (2) Response to Defendant Mahmood's Motion for Continuance, and (3) Response to Mahmood's Motion to Stay Proceedings.

### REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Mahmood's Response to the United States' Motion for Summary Judgment confirms that summary judgment is appropriate in this action. The United States' Motion makes it difficult to contest that fact as it references case after case supporting precisely the relief it requests in this action. In fact, Mahmood does not challenge the United States' arguments that a civil penalty of $11,000 per false claim should be applied by this Court. Instead, Mahmood attempts to rewrite the principles of collateral estoppel to allow him to relitigate the number of false claims and the amount of loss sustained by the United States—both of which were previously litigated by the parties and determined by this Court.

1

### 1. Mahmood is not entitled to relitigate his criminal conviction in this action.

Collateral estoppel is premised on the precept that a judgment in a prior suit "precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979). Mahmood advocates for a stunning reversal of those collateral estoppel principles. He argues, without a single case reference, that he is entitled to contest the evidence that the United States presented in his criminal case in order to create a fact issue on the same elements in this civil case. Mahmood apparently believes that there is a distinction between the facts underlying his counts of conviction and the evidence used to determine those facts.

Of course, there is no distinction between the evidence the parties used to litigate Mahmood's criminal action and the facts underlying his conviction. The evidence submitted by the United States and Mahmood, both to the jury and to this Court, constituted the facts. If Mahmood wished to contest the evidence submitted by the United States in the prior action, he should have contested it at that time. He cannot now say he wishes he would have done something differently—presented different evidence, made other objections, or used an alternate litigation strategy—to defeat collateral estoppel in this action.

### 2. This Court already determined that Mahmood submitted 85 false claims to government payors totaling $578,240.41.

The parties previously litigated the number of false claims and the loss incurred by Medicare and Medicaid, which were necessary components of this Court's judgment against Mahmood. In fact, this civil action stems directly from the Court's judgment against Mahmood in the criminal action, seeking only the relief that the United States is due as a matter of law. Mahmood now argues that he was convicted of seven counts of health care fraud and is therefore

only collaterally estopped on seven false claims. In addition to contravening applicable case law cited at length in the United States' Motion, Mahmood's argument ignores the facts attending the underlying prosecution. Mahmood was convicted of crimes constituting a scheme or artifice as well as conspiracy to commit health care fraud. Mahmood contends, again without support, that the Court can only look to the counts of conviction for health care fraud, not the issues actually litigated and necessarily determined in connection with his convictions—such as the number of claims and the amount of loss arising due to the crimes. *United States v. Cothran*, 302 F.3d 279, 289 (5th Cir. 2002) ("[W]here a fraudulent scheme is an element of the conviction, the court may award restitution for 'actions pursuant to that scheme.'") (citing *United States v. Stouffer*, 986 F.2d 916, 928 (5th Cir. 1993)); *see also United States v. Lozano*, 791 F.3d 535, 538 (5th Cir. 2015) ("As previously stated, because this case involved a fraudulent scheme, the district court was authorized to award restitution for 'actions pursuant to that scheme.'") (citing *Cothran*, 302 F.3d at 289).

In addition, the United States' Motion for Summary Judgment is accompanied by ample evidence supporting the fact that the number of claims and amount of damages were necessary components of this Court's prior judgment against Mahmood, including the Judgment in a Criminal Case, transcript excerpts from Mahmood's sentencing hearing, and Government Trial Exhibit 15A containing 85 claims totaling—to the penny—the amount of restitution owed to CMS as determined by this Court.[1] If Mahmood believed loss and restitution should be set by referencing only seven claims instead of 85, his opportunity to make those arguments has passed.

Mahmood also argues that loss and restitution were incorrectly determined because he should have received credit for the services actually provided. Again, Mahmood made those

---

[1] The remaining $3,992.74 paid by Medicaid was a crossover claim for a dual-eligible patient. The United States is not treating this 86th claim as a separate claim in this action.

same arguments in the previous action and is now making them on appeal. *See* Ex. E to Motion for Summary Judgment at 6:18-23 ("[A]ccording to the Government's theory and the Presentence Report theory, Dr. Mahmood should be punished for guideline loss purposes when the change that he caused to be made to the sequencing of the DRGs actually caused his hospital to be under-reimbursed, and that doesn't make any sense to me."). Mahmood asks this Court for a "do-over" that is simply not supportable in the face of Fifth Circuit case law, this Court's precedent, the False Claims Act, 18 U.S.C. § 3664(l), and the evidence in the record.

Finally, even if Mahmood were allowed to challenge the calculation of damages sought by the United States, established case law is clear that Mahmood is not entitled to an offset for services that may have been provided. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 189 (5th Cir. 2009) (The FCA "*protects* the Treasury from monetary injury. Put plainly, the statute is remedial and exposes even unsuccessful claims to liability. A person that presented fraudulent claims that were never paid remains liable for the [FCA's] civil penalty."). In any event, Mahmood did not provide any tangible benefit to the victims of his fraud (*i.e.*, CMS and TDHSS), only arguably to the beneficiaries of health care programs administered by the United States and Texas. *United States ex rel. Longhi v. United States*, 575 F.3d 458, 473 (5th Cir. 2009) ("In a case such as this, where there is no tangible benefit to the government and the intangible benefit is impossible to calculate, it is appropriate to value damages in the amount the government actually paid to the Defendants."); *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008) (False Claims Act action involving Medicare and Medicaid reimbursement) ("The government offers a subsidy (from the patients' perspective, a form of insurance), with conditions. When the conditions are not satisfied, nothing is due. Thus the entire amount that Edgewater received on these 1,812 claims must be paid back. Now it may be that, if the patients

had gone elsewhere, the United States would have paid for their care. Or perhaps the patients, or a private insurer, would have paid for care at Edgewater had it refrained from billing the United States. But neither possibility allows Rogan to keep money obtained from the Treasury by false pretenses, or avoid the penalty for deceit."). In other words, even if Mahmood could relitigate the loss and restitution amounts, the premise he hopes to prove is foreclosed by applicable case law.

### RESPONSE TO MAHMOOD'S MOTION FOR CONTINUANCE

Mahmood's request for a continuance is predicated on the notion that he is entitled to contest whether 78 of the 85 false claims previously determined to be fraudulent by this Court are in fact fraudulent.[2] For the reasons set forth above and in the United States' Motion, Mahmood is not entitled to contest those established facts under the doctrine of collateral estoppel.

Even if he were entitled to present such evidence, the evidence set forth by Mahmood to establish a basis for the continuance is inadequate. The Declaration of Franklyn Mickelsen admits that counsel for Mahmood sought review of the other 78 claims, presumably before Mahmood's sentencing hearing. Mr. Mickelsen states that he was "informed" that the medical records were not provided in discovery and that Mahmood's trial counsel did not have medical records in his file. However, the Declaration fails to state who informed Mr. Mickelsen that the records were not provided in discovery; when he was informed; what steps Mr. Mickelsen took to obtain the records, if any; if a continuance was sought in the criminal proceedings to allow Mr. Mickelsen to obtain those records; how Mr. Mickelsen intends to recover those records now;

---

[2] Mahmood's cites to Rule 56(d) of the Federal Rules of Criminal Procedure appear to be references to Rule 56(d) of the Federal Rules of Civil Procedure.

or how long that process will take. Mahmood has failed to set forth a reasonable basis to delay summary judgment, and his Motion for a Continuance should be denied.

**RESPONSE TO MAHMOOD'S MOTION TO STAY PROCEEDINGS**

For the reasons set forth above and in the United States' Motion, Mahmood is not entitled to a stay of this action. The United States cited extensively in its Motion to case law disallowing stays in similar circumstances.[3] Mahmood fails to cite a single case supporting a stay. Nor can Mahmood credibly claim that more judicial resources would be utilized by this Court granting summary judgment in favor of the United States than by staying this action. At best, those options are equal in terms of judicial economy. Unfortunately for Mahmood, however, courts have held that the United States is entitled to summary judgment in these circumstances, which is consistent with Congress' intent to efficiently compensate the United States following an applicable criminal conviction.[4] Mahmood's Motion to stay this action should be denied.

**CONCLUSION**

WHEREFORE, the United States of America prays that this Court deny Defendant Mahmood's Motion for Continuance and Motion to Stay Proceedings and enter final judgment against Mahmood awarding the United States $1,156,480.82 in damages, $935,000.00 in civil penalties, for a total of **$2,091,480.82**, plus the costs of this action pursuant to 31 U.S.C. § 3729(a)(3) and applicable judgment interest.

---

[3] Mahmood "takes issue" with the undersigned's use of the literary turn of phrase "rolls the dice" to depict Mahmood hopefully awaiting an unlikely result. This Court has recognized that there is some level of speculation accompanying motions to stay pending appeal. *VirnetX Inc. v. Apple, Inc.*, No. 6:12-cv-855, 2013 WL 7760959, *3 (E.D. Tex. July 22, 2013) (order) (denying motion to stay pending appellate proceedings in a separate case, noting that "it would be imprudent to delay this case based upon speculation about what might happen [in the appeal]"). Nonetheless, the United States agrees that the Fifth Circuit is a court of law and justice that has issued binding precedent requiring summary judgment in this action.

[4] Mahmood claims he is being "subjected to yet additional civil fines and penalties." Mahmood appears to mistake his criminal restitution as a civil fine or penalty.

Respectfully submitted,

JOHN M. BALES
United States Attorney

   */s/ Joshua M. Russ*
JOSHUA M. RUSS
Assistant U.S. Attorney
Eastern District of Texas
101 East Park Blvd., Suite 500
Plano, Texas 75074
E-mail: josh.m.russ@usdoj.gov
(972) 509-1201
(972) 509-1209 (fax)
Texas State Bar # 24074990

JAMES GILLINGHAM
Assistant U.S. Attorney
Eastern District of Texas
110 N. College Street; Suite 700
Tyler, Texas 75702
E-mail: james.gillingham@usdoj.gov
(903) 590-1400
(903) 590-1436 (fax)
Texas State Bar # 24065295

**ATTORNEYS FOR THE
UNITED STATES OF AMERICA**

## CERTIFICATE OF SERVICE

I hereby certify on this 7th day of January 2016, I caused copies of the foregoing to be served by electronic mail on:

Franklyn Mickelsen
Broden & Mickelsen
2600 State Street
Dallas, Texas 75204
(214) 720-9552
mick@texascrimlaw.com

                                       /s/ Joshua M. Russ
                                       JOSHUA M. RUSS