# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | CIVIL ACTION NO. 6:15-CV-948 |
| | § | |
| TARIQ MAHMOOD | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the United States' Motion for Summary Judgment (ECF 6). The case was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636. For the reasons set forth below, the Court **GRANTS in part** the motion for summary judgment.

## BACKGROUND

The United States of America ("the Government") filed this action on October 29, 2015 seeking relief against Defendant Tariq Mahmood ("Defendant") pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A), (B) and (C). Defendant was a licensed physician who owned multiple hospitals in Texas. The Government alleges that Defendant submitted, or caused to be submitted, false and fraudulent claims to Medicare and Medicaid that resulted in a reimbursement of $578,240.41 paid by Medicare and Medicaid to accounts controlled by Defendant. The Government alleges that Defendant caused his hospital employees to manipulate billing codes to fraudulently increase insurance reimbursements.

On April 11, 2013, a federal grand jury returned an Indictment against Defendant on 1 count of Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. § 1349, and 1 count of Health Care Fraud, in violation of 18 U.S.C. §§ 1347 and 2. The grand jury returned a First Superseding Indictment on December 18, 2013, on 1 count of Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. § 1349, 7 counts of Health Care Fraud, in violation of 18 U.S.C. §§ 1347 and 2, and 7 counts of Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A and 2. The case proceeded to a jury trial on July 21, 2014. At trial, the Government identified 85 claims for reimbursement where Defendant directed an employee to secretly access the coding after another employee had entered the codes, and to resequence the diagnosis codes to increase the reimbursement amount. On the substantive health care fraud counts in the First Superseding Indictment, the Government identified 7 specific patients for whom Defendant fraudulently directed the resequencing of diagnosis codes on Medicare claim forms. On July 24, 2014, the jury returned a verdict finding Defendant guilty on all 15 counts of the First Superseding Indictment.

The Court sentenced Defendant on April 14, 2015 to a total term of imprisonment of 135 months, consisting of 63 months of imprisonment on Counts 1 through 8, and 24 months on each of Counts 9 through 15 of the First Superseding Indictment. The Court ordered Counts 9 through 11 to run consecutive to Counts 1 through 8 and Counts 12 through 15 to run concurrently to Counts 1 through 8, for a total of 135 months. The Court additionally calculated the total loss caused by Defendant's fraud to be $599,128.02—the aggregate amount that Center for Medicare and Medicaid Services, Texas Department of Health & Human Services and BCBS reimbursed Defendant's hospitals—and ordered restitution to be paid in the amount of $599,128.02.

After the Court denied Defendant's motion for a new trial, Defendant appealed his conviction and sentence. On appeal, Defendant challenged the sufficiency of the evidence on his health care fraud and aggravated identity theft convictions, the trial court's failure to conduct an evidentiary hearing on his motion for a new trial, and the calculation of the sentence and restitution order. In an opinion filed on April 14, 2016, the Fifth Circuit Court of Appeals affirmed Defendant's convictions and the new trial ruling. The appellate court vacated Defendant's sentence and the restitution order and remanded the case for resentencing. *U.S. v. Mahmood*, 820 F.3d 177 (5th Cir. 2016). The appellate court held that Defendant "carried his burden at sentencing to show that his hospitals rendered legitimate services to patients and that Medicare would have paid substantial sums for those services had he not fraudulently billed them." *Id*. at 194. As a result, the "district court's refusal, without explanation, to credit Mahmood for the $430,639 that Medicare would have reimbursed his hospitals but for his fraud was a legally unacceptable method of calculating the loss." *Id*. This procedural error affected the applicable sentencing guideline range, requiring resentencing. For the same reasons, the restitution amount was determined based on an erroneous calculation of the victims' actual loss, requiring reconsideration on remand.

Following remand, the Court conducted a resentencing hearing on September 14, 2016. In a judgment entered on September 15, 2016, the Court sentenced Defendant to 135 months of imprisonment, consisting of 63 months on Counts 1 through 8 of the First Superseding Indictment and 24 months on Counts 9 through 15 of the First Superseding Indictment. Counts 9, 10 and 11 of the First Superseding Indictment were ordered to run consecutively to the 63-month term of imprisonment, for a total term of 135 months. In addition, the Court ordered the payment of restitution in the amount of $145,358.23.

Prior to the decision of the appellate court, the Government filed the motion for summary judgment that is currently before the Court. In its motion, the Government seeks an award of $2,091,480.82 against Defendant, plus costs and interest. The Government asserts that Defendant is estopped from denying FCA liability as a result of his conviction. The award requested by the Government includes $1,156,480.82 in compensatory damages and $935,000.00 in civil penalties. The Government calculated the compensatory damages amount by trebling the "amount of the claims paid by government payors as a result of Mahmood's fraud" and then subtracting the amount of restitution ordered by the Court.[1] The requested civil penalty of $935,000.00 represents $11,000 for each of 85 claims that were wrongfully submitted to Medicare and Medicaid.

In response, Defendant filed a Combined Rule 56(d) Motion for Continuance; Alternative Motion to Stay Proceedings Pending Outcome of Criminal Appeal; and Response to the Government's Motion for Summary Judgment (ECF 7). In the response, filed prior to the resolution of Defendant's appeal, Defendant asserts the Court should stay this case pending resolution of his appeal in the interest of judicial economy. He also argues that he is not estopped from denying liability as to all 85 fraudulent claims forming the basis of the restitution award because estoppel only applies to claims for the 7 patients identified in the health care fraud counts. Defendant seeks a Rule 56(d) continuance to obtain medical records pertinent to the other 78 patients and have them reviewed by the coding expert that reviewed the medical records of the 7 patients forming the basis for the substantive counts of conviction. Defendant concedes that, unless his convictions are reversed on appeal or in a post-conviction § 2255 motion, he is liable under the FCA for the claims made with respect to the 7 patients identified in the substantive counts of the First Superseding Indictment. As a result of the restitution order and

---

[1] *See* The United States' Motion for Summary Judgment, ECF 6, at *11–12.

4

criminal forfeiture provisions, Defendant argues that the Government has been more than made whole in this matter.

After the appellate court issued its April 14, 2016 opinion, the Government filed a Notice of Additional Authority Supporting Summary Judgment (ECF 21). The Government asserts that the holding that the Court must credit Defendant for the $430,639 that Medicare would have reimbursed his hospitals but for his fraud when calculating the amount of restitution due does not affect the amount of damages and civil penalties in this FCA case. The Government submits that its calculation of $1,156,480.82 in damages already includes a credit for restitution.

Defendant responds that the Government's actual damages are only $143,608—the amount of overpayment. If the amount is trebled, the compensatory damages are $430,924. With regard to civil penalties, the possible range is $467,500 to $935,000, representing a penalty of not less than $5,500 and not more than $11,000 for each false claim. Defendant argues that the restitution amount of $143,608 should be deducted from the final amount due.

## SUMMARY JUDGMENT STANDARD

The Court may only grant a motion for summary judgment when there is no genuine dispute of material fact and the moving party is entitled to summary judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "material fact" is one that might affect the outcome of the suit under governing law. *Id.* The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id.* All facts and inferences are viewed "in the light most favorable to the nonmoving party." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Id*.

## ANALYSIS

### I. False Claims Act Liability

In his Response to the United States' Notice of Additional Authority Supplementing Summary Judgment, Defendant focuses on the calculation of damages and not liability pursuant to the FCA. The doctrine of collateral estoppel precludes the relitigation of an issue decided on the merits in an earlier proceeding. *U.S. v. Thomas*, 709 F.2d 968, 972 (5th Cir. 1983). "Because of the existence of a higher standard of proof and greater procedural protection in a criminal prosecution, a conviction is conclusive as to an issue arising against the criminal defendant in a subsequent civil action." *Id.* (citing *In the Matter of Raiford*, 695 F.2d 521 (11th Cir. 1983). An estoppel in favor of the Government arises in a subsequent civil proceeding where the questions at issue were directly determined in a prior criminal prosecution and

conviction. *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568–69, 71 S.Ct. 408, 413–14 (1951).

Defendant's earlier argument that he is only estopped from challenging liability on the claims for the 7 patients identified in the substantive counts of the First Superseding Indictment lacks merit. Defendant's pleadings admit that the loss in his criminal case results from the 85 fraudulent claims. All 85 claims at issue were considered in the criminal action. As noted by the appellate court, the Government identified 85 claims at trial that were fraudulently resequenced at Defendant's direction.[2] The Government's witness testified concerning the amount billed on those claims and the amount that Medicare would have reimbursed if those claims were submitted without Defendant's fraud.[3] "[T]he judgment in the prior proceeding precludes the relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5 (1979). The factual conduct and violation of law alleged here was distinctly put in issue and directly determined against Defendant in the criminal case. As a result, he is collaterally estopped on the issue of liability in this FCA action.

**II.     Damages**

Once liability is established, the FCA provides for the recovery of "3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a). Defendant asserts that the actual damages amount in this case is the amount of the overpayment. The Government's evidence at trial established that Medicare would have reimbursed Defendant's hospitals all but $143,608.[4] As a result, Defendant submits that the trebled damages amount is $430,824. The Government, on the other hand, argues that an offset for the fair

---

[2] *See U.S. v. Mahmood*, 820 F.3d at 183.
[3] *Id*. at 194.
[4] *Id*. at 184, 196.

7

market value of the services rendered should not be applied until after the Court trebles the full amount that Medicare and Medicaid paid. The Government seeks to treble the full amount paid to Medicare and Medicaid ($574,247.67 and $3,992.74, respectively) and then subtract a restitution credit of $578,240.41, for a total amount of $1,156,480.82. Notably, the amount of restitution at resentencing was reduced to $145,358.23.[5] Following resentencing, the Government's calculation would now result in an increased damages award of $1,589,363.

The Government's position is not supported by the statute or case law. The statute provides that the amount to be trebled is the "damages which the Government sustains." 31 U.S.C. § 3729(a). The evidence at trial established that Defendant's hospitals provided legitimate services to the patients at issue. The fraud took place in the manipulation of the coding process after services were provided to fraudulently increase the amount of reimbursement. Medicare, however, received value from those services provided to its beneficiaries. *U.S. v. Mahmood*, 820 F.3d at 195 (citing *U.S. v. Jones*, 664 F.3d 966, 984 (5th Cir. 2011). As a result, the calculation of the Government's loss in this case requires consideration of the fair market value of the services rendered. *Id*.

Courts look to the actual damages or total loss in determining the amount of damages to treble pursuant to § 3729(a). *See U.S. v. Bornstein,* 423 U.S. 303, 96 S.Ct. 523, 532 (1976); *U.S. v. Peters*, 927 F.Supp. 363, 368 (D. Neb. Jun. 3, 1996); *U.S. v. Szilvagyi*, 398 F.Supp.2d 842, 849–50 (E.D. Mich. Oct. 25, 2005) (trebling the total loss suffered by Medicare). The Supreme Court in *Bornstein* stated that the computation is based on the actual damages. *Id*. The Court further explained that "[t]he Government's actual damages are equal to the difference between the market value of the [product or services] and the market value [they] would have had"

---
[5] The total restitution amount constitutes $751.70 to Blue Cross Blue Shield, $998.19 to Medicaid and $143,608.34 to Medicare.

without the fraudulent conduct. *Id*. In *Peters*, the Court determined that the "measure of actual damages is determined by the amount paid due to the false claim minus the amount paid had the claim been truthful." *U.S. v. Peters*, 927 F.Supp. at 368. In *U.S. v. Boutte*, a case relied upon by the Government, the Court similarly used the amount of actual loss for FCA treble damages. *U.S. v. Boutte*, 907 F.Supp. 239, 242 (E.D. Tex. Oct. 25, 1995). By contrast, courts should look to the full amount paid only if the government would not have paid any amount but for the fraud. *See U.S. v. Anghaie*, 633 Fed.Appx. 514 (11th Cir. 2015).

Here, the amount of actual loss to Medicare is $143,608.34. As determined at resentencing, the actual loss to Medicaid is $998.19. Trebling the amount of actual damages, as required by 31 U.S.C. § 3729(a), results in a damages award of $433,819.59.

### III. Civil Penalties

In addition to treble damages, the statute provides that Defendant "is liable to the United States Government for a civil penalty of not less than $5,000 and nor more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 . . ." 31 U.S.C. § 3729(a). The parties do not dispute that an adjustment for inflation increases the civil penalty range to $5,500 to $11,000. *See* 28 C.F.R. § 85.3(a)(9). As addressed above, there are 85 false claims in this case. Defendant does not dispute that the applicable civil penalty range in this case is $467,500 to $935,000, which is calculated by multiplying the applicable civil penalty range by 85.[6]

The Government argues that the maximum penalty of $11,000 per false claim should be awarded, for a total penalty of $935,000. The Government submits that Defendant did not cooperate with the Government, resulting in an investigation of Defendant's multiple hospitals

---

[6] *See* Defendant's Response to the United States' Notice of Additional Authority Supplementing Summary Judgment, ECF 22, at *4.

across the State of Texas and reviewing records from 2005 to 2013. The Government asserts that significant time and resources were spent in the investigation and prosecution of Defendant. Further, the Government argues that Defendant's criminal adjudication signifies the necessity of a civil penalty at the high end of the applicable range. The Government points to a recent case in this District in which the Court elected a mid-range penalty of $8,250 per false claim where there was not an attendant criminal conviction, and asserts that the penalty should be higher here since there is a criminal conviction for the same conduct. *See United States of America ex. rel. Harman v. Trinity Industries, Inc., et al.*, Civil Action No. 2:12-CV-89 (E.D. Tex. Jun. 9, 2015).

Neither Defendant's response nor his sur-reply brief to the motion for summary judgment addresses the amount of the civil penalty to be awarded per false claim. He does not respond to the Government's argument concerning the time and resources expended on this matter or the relevance of his criminal conviction to the amount of the penalty. In his Response to the United States' Notice of Additional Authority Supplementing Summary Judgment, Defendant acknowledges that the range of penalty is $5,500 to $11,000 per each of the 85 false claims and Defendant includes a footnote requesting a hearing to present mitigating evidence.[7]

"The fact . . . that Congress provided for treble damages and an automatic civil monetary penalty per false claim shows that Congress believed that making a false claim to the government is a serious offense." *U.S. v. Mackby*, 339 F.3d 1013, 1018 (9th Cir. 2003). The range of statutory penalty available to the Court evidences the congressional intent to give courts discretion in fashioning an appropriate penalty. *See U.S. v. Peters*, 927 F.Supp at 369. With a monetary fine, the "touchstone is value of the fine in relation to the offense." *Austin v. U.S.*, 509 U.S. 602, 113 S.Ct. 2801, 2815 (1993) (Scalia, J., concurring).

---

[7] *See* Response to the United States' Notice of Additional Authority Supplementing Summary Judgment, ECF 22, at *4.

The appellate court decision in Defendant's criminal case fully describes the scheme enacted by Defendant to manipulate the Medicare-billing procedures at his hospitals. *See U.S. v. Mahmood*, 820 F.3d at 182–84. Without any review of patient medical records, Defendant directed his employees to resequence billing codes in the billing system to increase Medicare reimbursement amounts. When employees became unwilling to cooperate with Defendant's requests, Defendant moved on to other employees whom he directed to secretly access the billing system to resequence the codes entered by other coders. *Id.* Defendant's conduct resulted in a criminal prosecution and judgment for a lengthy term of imprisonment, evidencing the seriousness of the conduct. There is no evidence to suggest that there are any mitigating circumstances Defendant could show that would make a civil penalty at the high end of the statutory range inappropriate. As a result, the civil penalty in this case is assessed at $11,000 per false claim, for a total of $935,000.

## CONCLUSION

There are no genuine issues of material fact in this case. The United States is entitled to judgment as a matter of law. The motion for summary judgment should be granted in part such that the Government is entitled to recover damages in the amount of $433,819.59 and a civil penalty of $935,000.00, for a total of $1,368,819.59. Defendant has not shown authority for his request that the amount of restitution be deducted from the final amount due. It is therefore

**ORDERED** that the United States' Motion for Summary Judgment (ECF 6) is **GRANTED IN PART**. In accordance with 31 U.S.C. § 3729(a), the Government is awarded damages in the amount of **$433,819.59** against Defendant Tariq Mahmood. In addition, Defendant Tariq Mahmood is ordered to pay a civil penalty in the amount of **$935,000.00**.

Within 10 business days, the Government shall submit a proposed Final Judgment consistent with this Memorandum Opinion and Order.

So ORDERED and SIGNED this 26th day of September, 2016.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE